# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:09cv42

| | |
|---|---|
| ARTHUR SNOZNIK; and BETSY SNOZNIK, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| Vs. | )    **ORDER**<br>) |
| JELD-WEN, INC., | )<br>) |
| Defendant. | )<br>) |

**THIS MATTER** is before the court on defendant's "Motion to Compel, or, in the Alternative, Motion in Limine to Exclude Plaintiff's Expert, Dr. Alford" (#27) and non-party Dr. Alford's "Motion for Protective Order" (#28). It appearing that the issues have been fully briefed and after a complete examination of all briefs and affidavits that have been filed, the undersigned enters the following findings, conclusions and order.

## FINDINGS AND CONCLUSIONS

### I. Facts and Procedural History

In their Complaint, the plaintiffs have presented claims against the defendant alleging claims of negligence, breach of implied warranty and express warranty and

loss of consortium. Complt. ¶¶ 1-42. The plaintiffs' contend that Arthur Snoznik was injured when he was cleaning windows manufactured by the defendant and which had been installed in the home of the plaintiffs. Complt. ¶¶ 1-42. It is alleged that while plaintiff, Arthur Snoznik, was cleaning a window, the window left its casement causing the plaintiff to be pulled from the second floor window of his home to the ground. Complt. ¶¶ 15-17. Mr. Snoznik alleges that he has suffered significant injuries as a result of this fall.

Plaintiffs' counsel retained Dr. Charles Alford, Ph. D. to testify as an expert economist concerning various elements of Mr. Snoznik's economic losses. Alford Aff. ¶ 5. Dr. Alford has been a practicing forensic economist for approximately thirty-five years. Alford Aff. ¶¶ 2 & 3.

On June 10, 2009, the defendant filed a motion entitled "Jeld-Wen's Motion to Compel, or in the Alternative, Motion in Limine to Exclude Plaintiffs' Expert, Dr. Alford and Supporting Citations of Authority" (#27). In the motion, the defendant states that on May 7, 2009 it served a subpoena duces tecum upon Dr. Alford requesting in pertinent part:

    a.    The entire file that is maintained or relates in any way to the Plaintiffs;

    b.    Any and all documents, electronic data, photographs and recordings that refer or relate to Plaintiffs, the property locally

>    described as 804 Cherrywood Lane, Pisgah Forest, NC, or the
>    product at issue;
> c. Any and all documents, electronic data, photographs and
>    recordings possessed and/or reviewed related to this case; and
>
> d. All data or other information considered by you in forming your
>    opinions.

The defendant alleges in the motion that Dr. Alford and plaintiffs' counsel had until May 21, 2009 to move to quash the subpoena, pursuant to Fed. R. Civ. P. 45(c)(2)(B) and that neither Dr. Alford nor the plaintiffs filed a motion to quash. Def's Motion #27, ¶¶ 5, 6. In defendant's motion, the defendant states that on May 27, 2009, Dr. Alford provided his expert reports but that the underlying data, including electronic files, Excel spreadsheets, and other information sought pursuant to the subpoena duces tecum were not attached. Def's Motion #27, ¶ 7. On May 27, 2009, plaintiffs' counsel informed defendant's counsel that Dr. Alford considered his electronic files as proprietary information and requested that the defendant agree to a Protective Order regarding Dr. Alford's electronic calculations and electronic data. The defendant states that it disagreed but did agree to enter into a Protective Order in order to obtain the information. Def's Motion, #27, ¶¶ 8, 9. On June 1, 2009, the defendant alleges that plaintiffs' counsel informed defendant's counsel that Dr. Alford was going to continue to refuse to produce his electronic information. Def's Motion #27, ¶ 11. Defendant also states that the defendant has conferred with its

consulting economist and that the economist has stated that the electronic files are needed in order to analyze and review the calculations that form the basis of Dr. Alford's opinions. Def's Motion #27, ¶ 12. The defendant finally does not identify this economist. The defendant finally states in the motion that without having access to the electronic Excel spreadsheet data it will be impossible for the defendant to check Dr. Alford's calculations or even the figures and information that were included. Def''s Motion #27, ¶ 13.

On June 11, 2009 Dr. Alford filed a motion (#28) as a nonparty, pursuant to Rules 26(c) and 45(c) of the Federal Rules of Civil Procedure and moved the court for a Protective Order that would protect Dr. Alford from being required to produce electronic versions of Dr. Alford's Excel computer templates. Alford's Motion #28. Attached to the memorandum in support of the Motion for Protective Order is the affidavit of Dr. Charles L. Alford, III (#29-2) in which Dr. Alford avers he provided to plaintiffs' counsel and defendant's counsel copies of his reports regarding his analysis of the economic losses that the plaintiff Arthur Snoznik contends he suffered as a result of the fall, including spreadsheets that included all of the data that was used in Dr. Alford's computations. Alford Aff. ¶ 2. Dr. Alford avers further the documents he provided would allow the defendant to replicate his computations and check them for accuracy and that such replication can be performed with a hand-held

calculator.  Alford Aff. ¶ 13.

Also attached to motion are copies of Dr. Alford's reports produced to defendant's counsel which consist of Dr. Alford's expert report of May 27, 2009; Dr. Alford's expert report of November 3, 2008; Snoznik Life Care Worksheets dated October 16, 2008; Snoznik Earnloss Worksheets dated May 27, 2009; Snoznik Earnloss Worksheets dated November 1, 2008; and Snoznik Life Care Worksheets dated May 27, 2009.  (#29-3)  These reports contained approximately 77 pages of documents, including what clearly appears to be spreadsheets and financial information concerning Mr. Snoznik's financial affairs.

For many years Dr. Alford has used commercial software programs to develop his expert reports and analysis, including Microsoft Excel.  Alford Aff. ¶ 27.  After beginning the use of the Excel program, Dr. Alford began to develop templates for his personal use which could be used in conjunction with the Microsoft Excel software which significantly improved Dr. Alford's productivity in preparing reports. Alford Aff. ¶ 10.  These templates are used to make computations of lost earnings and fringe benefits in injury cases, death cases, life-care plans, stock options and other types of cases involving litigation.  Alford Aff. ¶ 10.  Dr. Alford avers in his affidavit, that his templates have evolved through numerous versions and hundreds of hours of time in development.  Alford Aff. ¶ 11.  He considers the templates as

proprietary and confidential business information. Alford Aff. ¶¶ 11, 12. He is not aware of any forensic economist who does not use a spreadsheet program. Dr. Alford avers he began using the Excel program a few years after it was introduced in the mid-1980's. Aff. ¶¶ 8, 9. He states that he learned very early that using templates that he created for his own personal use could significantly improve his productivity and he wrote he own templates for many types of analysis.

Dr. Alford states in his affidavit that in the Snoznik reports he had fully identified the facts and assumptions and provided to defendant's counsel hard copies of the spreadsheets that included all of the data that were input into his computations and that the pages of the spreadsheet showed details of all information that was used as input, including detailed information showing a summary of the data taken from income tax earnings, information received from Mrs. Snoznik regarding Mr. Snoznik's earnings history, bonus and fringe benefits and Dr. Alford's own assumptions that were used in the analysis. Alford Aff. ¶ 12. He further avers as follows: "With a hand-held calculator and the tables that were included in my reports, one can directly compute the annual growth rates, discount rates, tax rates, life expectancy, and worklife expectancy that I have applied to my analysis". ¶ 13. Lastly, Dr. Alford avers that if he required to provide his electronic templates that he fears that if "defendant's expert is not skilled in spreadsheet analysis, having access

to my templates will give him or her the full benefit of the many hours of my personal time that I have invested in developing them and that he has authorized his attorney to offer to produce an electronic verison of the data input into the Excel program redacting Dr. Alford's propriety confidential templates." ¶¶ 16, 17.

In Jeld-Wen, Inc.'s Response and Brief in Opposition to Plaintiff's Expert's Motion for Protective Order (#33), the defendant again contends that Dr. Alford's motion for a Protective Order is untimely and that as a result he is required by law to comply with the subpoena. The defendant states as follow: "Federal Rule of Civil Procedure 45(c)(2)(B) provides that an objection to a subpoena 'must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served' ". The defendant again contends that Dr. Alford was served with a subpoena on May 7, 2009 and he was required to produce the information or file his objection on or before May 22, 2009. Jeld-Wen, Inc.'s Response and Brief #33. Jeld-Wen further states that its consulting economist has already agreed not to use the data templates for any purpose other than analyzing Dr. Alford's calculations, but Jeld-Wen again does not identify this economist. #33.

Dr. Alford filed a reply to Jeld-Wen's response on July 10, 2009 in a pleading entitled "Dr. Alford's Reply to Defendant Jeld-Wen's Response in Opposition to Dr. Alford's Motion for a Protective Order" (#37). In the response, Dr. Alford shows that

the defendant did not serve a subpoena on Dr. Alford but had a subpoena issued on May 7, 2009 and mailed it to plaintiffs' counsel but not to Dr. Alford. In a supplemental affidavit, Dr. Alford avers that the defendant never directly served him with the subpoena and states that he obtained a copy of the subpoena by a letter dated May 11, 2009 from plaintiffs' counsel and he believes he received a copy of the subpoena from plaintiffs' counsel no sooner than May 12, 2009. Alford Supp. Aff. ¶¶ 2, 3. In his affidavit, Dr. Alford further states that on May 28, 2009 he offered to produce an electronic verison of his spreadsheets that he had previously provided but with his templates and formulas redacted. The defendant rejected this offer. Alford Supp. Aff. ¶¶ 10, 11. In his supplemental affidavit, Dr. Alford explains:

> 15. Allowing Jeld-Wen's expert to review the templates, functions, and macros I created would require me to share my proprietary information with someone in my professional field and therefore, my competition. That expert would be able to see templates and benefit from my work without contributing towards the cost of their creation.
>
> 16. If the Court were to require production of the Excel templates even under the terms of Jeld-Wen's proposed protective order, I am concerned I may be forced to produce them in all future cases in which I serve as an expert, rendering all of my years of work on these templates valueless.
>
> 17. There is particularly vulnerability to the dissemination of my templates given their electronic format; they would be very easy to spread via email or to be adapted for other experts' use.

II. **Discussion**

A. The Subpoena.

The undersigned has examined the subpoena that was allegedly issued in this matter. (#27-2, Exhibit A) An examination of that subpoena shows the provisions of Rule 45(a)(2)(B) of the Rules of Civil Procedure appear to be applicable:

*Issued from Which Court.* A subpoena must issue as follows:

B. For attendance at a deposition, from the court for the district where the deposition is to be taken;

The subpoena that is attached to Jeld-Wen's Motion (#27) shows that the subpoena was issued in the United States District Court for the Western District of North Carolina where this action is pending. Dr. Alford was subpoenaed to appear at the office of Grimes & Teich, LLP, 111 E. North Street, Greenville, SC which is in the district of South Carolina. The rule set forth above reveals that the issuing court should have been the court for the district where the deposition of Dr. Alford was to be taken, that being the United States District Court for the District of South Carolina. The undersigned further notes that the subpoena was issued by Jeffrey L. Goodman, as attorney for the plaintiff, when it appears from the court file that Mr. Goodman represents the defendant.

Rule 45(b) of the Federal Rules of Civil Procedure provides as follows:

Service.
(1) *By Whom: Tendering Fees; Serving a Copy of Certain Subpoenas*

> Any person who is at least eighteen years old and not a party may serve a subpoena. <u>Serving a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for one day's attendance and the milage allowed by law.</u> Fees and mileage need not be tendered when the subpoena issued on behalf of the United States or any of its officers or agencies. If the subpoena commands the production of documents, electronic stored information, or tangible things or the inspection of premises before trial, then before it is served, a notice must be served on each party.
>
> (4)  *Proof of Service.*
>
> Proving service, when necessary, requires filing with the issuing court a statement showing the date and manner of service and the names of the persons served. The statement must be certified by the server.

An examination of the subpoena (#27-2, Exhibit A) shows that the subpoena was neither served upon Dr. Alford nor is there any evidence that Dr. Alford was provided the fees or mileage as required by the rules. In his supplemental affidavit (#37-2), Dr. Alford avers he never gave anyone authority to accept service of the subpoena on his behalf nor did he give anyone authority to waive any objections that he might have to a subpoena. He clearly avers that he was never served with the subpoena as required by law.

Due to the fact that: 1) the subpoena was not issued through the appropriate court; and 2) the subpoena was never served by the defendant upon Dr. Alford as required by law, the undersigned finds that Dr. Alford has not waived his objection to the subpoena and his Motion for a Protective Order (#28) shall be considered as

such an objection and that it was timely filed. Due to the fact the subpoena was not issued by the appropriate court and was never served upon Dr. Alford as required by law, Jeld-Wen's Motion to Compel or in the Alternative, Motion in Limine to Exclude Plaintiffs' Expert Dr. Alford and Supporting Citations of Authority (#27) will be denied.

B. <u>Motion for Protective Order of Non-party Charles L. Alford.</u>

The Motion for Protective Order of Dr. Alford shows that he has made his motion, not only pursuant to Rule 45(c) of the Federal Rules of Civil Procedure, but also pursuant to Rule 26(c) of the Federal Rules of Civil Procedure. Rule 26(c) provides as follows:

**(c) Protective Orders.**

(1) *In General*. A party or <u>any person</u> from whom discovery is sought may move for a protective order in the court where the action is pending----or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party <u>or person</u> for annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(A) forbidding the disclosure or discovery;

(B) specifying terms, including time and place, for the disclosure or discovery;

> (C) prescribing a discovery method other than the one selected by the party seeking discovery;
>
> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matter;
>
> (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way;
>
> (2) **_Ordering Discovery_**. If a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party <u>or person</u> provide or permit discovery.
>
> (3) **_Awarding Expenses_**. Rule 37(a)(5) applies to the award of expenses.

It is clear from the rule that Dr. Alford has a choice, that is, he can move for a Protective Order in the court where the action is pending, that being in the Western District of North Carolina, or he can, as an alternative, file such a motion in the court for the district where his deposition may be taken. He has chosen the court where the action is pending, that being in the Western District of North Carolina.

In <u>Mannington Mills, Inc. v. Armstrong World Industries, Inc.</u>, 206 F.R.D. 525 (D.Del. 2002) the court set forth the standard that is to be applied:

> As a result, a nonparty may seek from the court protection from discovery via the overlapping and interrelated provisions of both Rules 26 and 45. A nonparty moving to quash a subpoena, in essence, is the same as moving for a protective order that such discovery not be allowed.
> Therefore, this court is required to apply the balancing standards–relevance, need, confidentiality and harm. And even if the

information sought is relevant, discovery is not allowed where no need is shown, or where compliance is unduly burdensome or where the potential harm caused by production outweighs the benefit.

Id., at 529(citation omitted0.

In the Motion to Compel (#27), the defendant contends that it has not received a written report from the expert witness, Dr. Alford. Def.'s Motion ¶ 7. An examination of the written report produced by Dr. Alford compels a finding to the contrary. In his affidavit, Dr. Alford avers:

> In the Snoznik reports I have fully identified the facts and assumptions that were put into my analyses. Furthermore, I have provided to defendant's counsel hard copies of the spreadsheets that include all the data that were input into my computations. These include projected growth rates in earnings and life care costs, specific discount rates, work life expectancy, life expectancy, actual projected standard deduction, itemized deductions, and personal exemptions in computing income taxes on earnings and actual projected marginal tax brackets and rates. Also provided the defendant's counsel with pages of the spreadsheets that showed details of all information that was used as input, including detailed information showing a summary of data taken from income tax returns; information received from Mrs. Snoznik regarding his earnings history, bonuses, and fringe benefits; and my own assumptions that were used in the analysis.
>
> The detailed summary tables that were included in my reports, along with all of the facts and assumptions that are also identified in my reports and are provided again in the hard copies of spreadsheet documents will allow defendant's counsel or expert to replicate my computations and check them for accuracy. With a hand-held calculator and the tables that were included in my reports, one can directly compute the annual growth rates, discount rates, tax rates, life expectancy, and worklife expectancy that I have applied in my analyses. Alford Aff. #29-2, ¶¶ 12, 13.

It thus appears that Dr. Alford has provided a complete written report to the defendant.

What this court has determined that the defendant is seeking is not the report but the electronic file which contains the templates that Dr. Alford has developed that gives him a competitive advantage over his competitors. Alford Aff. ¶¶ 11, 16. The real issue in this case is whether a Protective Order should be entered protecting Dr. Alford from being required to produce his electronic templates that he has created. In considering the relevance of the electronic templates that Dr. Alford created, it is the opinion of the undersigned that they do not have any relevance to the actual issues in this trial. According to the affidavit of Dr. Alford, the templates that Dr. Alford has developed allow him to prepare his reports more expeditiously than his competitors. Thus, the templates have no relevance to the actual information produced. The templates speed up production, but do not change the calculations. In a nutshell, Dr. Alford has found a way to make the Microsoft Excel spreadsheet operate as a quicker and more efficient calculator.

In considering the need of the defendant to have the templates, the undersigned is of the opinion that the defendant has not shown any real need for the templates due to the fact that Dr. Alford has provided, as required by Rule 26, his written report which contains in writing all of the information that he has considered and he has

further offered to explain the complete written report, including every calculation by use of a calculator. Dr. Alford's has further averred in his affidavit that he has authorized his attorney to offer to produce an electronic verison of the data input into the Excel program after redacting Dr. Alford's proprietary and confidential templates. Alford Aff. ¶ 17. Thus the defendant has not shown any need for the templates.

Addressing confidentiality, the court finds that Dr. Alford, in his affidavit, has described the work that he has performed in developing the templates, including the investment of "hundreds of hours of my personal time in their development." Alford Aff. ¶ 11. He further avers, "I have always considered these templates as proprietary and confidential business information". Dr. Alford is a nonparty. The direction to a court when a nonparty is asserting confidentiality, is that the court is first to attempt to alleviate undue hardship through the assessment of cost or the issuance of a Protective Order. Truswal Systems Corp. v. Hydro-Air Engineering, Inc., 813 F.2d 1207, 1210 (Fed. Cir. 1987). Dr. Alford is requesting the issuance of such a Protective Order.

Analyzing the final balancing standard, that being harm, shows that the only person who has any potential of being harmed by the production of the templates is Dr. Alford. As Dr. Alford has explained in his affidavits, when his deposition is taken, he, with the use of a hand-held calculator and his reports, can compute all

conclusions set forth in his report. Alford Aff. ¶ 13. As stated above, Dr. Alford has offered to and can be ordered to produce the spreadsheets contained in his report electronically without his confidential templates. As a result, the defendant will not be harmed in any way if it and its expert does not have Dr. Alford's electronic templates. On the other hand, if his templates are disclosed, Dr. Alford could lose any competitive advantage that he has created for himself by creating the templates. If Dr. Alford is ordered to produce his templates, then at least the economist hired by the defendant will have access to them. This economist would be a person who could be a potential competitor of Dr. Alford. The likelihood of harm is increased if a person's trade secrets were disclosed in litigation to competitors. <u>Coca-Cola Bottling Co. of Shreveport, Inc. v. The Coca-Cola Co.</u>, 107 F.R.D. 288 (D. Del. 1985). The harm factor must be weighed in favor of granting Dr. Alford's Motion for Protective Order.

The court has considered all of the factors of relevance, need, confidentiality and harm. From the facts presented in this case, all of these factors must be resolved in favor of granting Dr. Alford's Motion for Protective Order. This is not unlike <u>Earp v. Peters</u>, 2009 WL 1444707 (W.D.N.C. 2009).[1] In that case, Honorable David

---

[1] Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

Keesler, United States Magistrate Judge, considered a request by plaintiff that defendant be compelled to produce copyrighted software programs. In considering the factors, Judge Keesler denied the request of the defendant and denied the production of the requested software. Judge Keesler found that the defendant's had already disclosed the underlying data and the defendants had made their animator and accident reconstructionist available for multiple depositions. In the case presented here, Dr. Alford's electronic templates may also be protected by common law copyright and are considered by him to be his proprietary and confidential templates; thus, this court has considered that they should also be protected, particularly in light of the fact that he has produced all of the information in writing and has offered to produce the information electronically without his electronic templates. The court will therefore allow Dr. Alford's Motion for Protective Order.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

(1)  Defendant's Motion to Compel, or, in the Alternative, Motion in Limine to Exclude Plaintiffs' Expert, Dr. Alford (#27) is hereby **DENIED**;

(2)  Nonparty Dr. Alford's Motion for Protective Order (#28) is **ALLOWED;**

(3) Dr. Alford shall not be required to produce his Excel template(s) to defendants unless upon further Order of this court, and a **PROTECTIVE ORDER** is entered releasing Dr. Alford from such obligation under the Subpoena. Dr. Alford shall, however, provide during his deposition an oral and manual explanation of the mathematical assumptions and equations used in generating his expert opinions as to the economic damages allegedly suffered and that will be suffered by plaintiffs herein. Such manual demonstration shall fully explain all processes employed in his Excel template(s) without revealing proprietary information concerning the program. In complying with this provision, Dr. Alford may provide to defendant an electronic version of his excel spreadsheet with proprietary programs or templates deleted therefrom. Such **PROTECTIVE ORDER** further provides further that any information disclosed during Dr. Alford's deposition in this matter of a proprietary or confidential nature shall only be used in this case, and any use outside of this litigation by any person or entity may result in the imposition of sanctions including contempt; and

(4) At this time the court orders that the parties shall bear their own costs

and fees in maintaining and responding to such motions, but will consider a motion by Dr. Alford for his costs or attorneys' fees in securing such Protective Order. Such motion shall be filed not later than August 28, 2009, and shall be accompanied by appropriate affidavits as to hours expended and customary fees.

Signed: August 21, 2009

_____
Dennis L. Howell
United States Magistrate Judge